6618

SPEEGLE v. SOVEREIGN CAMP OF THE WOODMEN OF THE WORLD.

INSURANCE—MUTUAL BENEFIT SOCIETIES.—A certificate of membership in a mutual benefit society gave $3,000 on death of the member to the beneficiary named in the certificate, who according to the by-laws shall be his wife, children, adopted children, parents, etc., and if the beneficiary named in the certificate shall die before the member, and he shall afterwards die without naming another beneficiary, the benefit shall go to the *member's next living relation in the order named.* The member named his wife as his beneficiary. She predeceased him. He died leaving a second wife without having changed the beneficiary. *Held,* his second wife took the benefit.

Before WATTS, J., Greenville, December, 1906. Reversed.

Action by Hattie K. Speegle against Sovereign Camp of the Woodmen of the World, Arthur Speegle *et al.* From judgment in favor of defendants, except first named, plaintiff appeals.

*Mr. B. M. Shuman,* for appellant, cites: *Question must be settled by construction of Constitution and by-laws of society:* Bac. Ben. Soc., secs. 243a, 243c; 3 Ency., 960, 1080; 3 L. R. A. (N. S.), 334; 44 N. W., 112; 31 Atl., 1089; 43 L. R. A., 390; 31 Fed. R., 178; 60 S. W., 897; 97 S. W., 504. *If beneficiary named die before member, all contingent interest ceases:* Bac. Ben. Soc., secs. 255, 243c, 304; 31 At. R., 1089; 31 Fed. R., 177; 41 Fed R., 1; 12 L. R. A., 209; Joyce on Ins., sec. 827; 97 S. W., 504; 60 S. W., 897; 37 N. W., 817; 57 N. E., 1003; 38 L. R. A., 128. *And constitution and by-laws speak at death of member:* 12 L. R. A., 209; 3 L. R. A. (N. S.), 334; Bac. Ben. Soc., sec. 255; 31 At. R., 1089; 130 Ill., 468; 60 S. W., 897; 97 S. W., 504; 2 Mackey, 70; 44 N. W. R., 112; 37 N. W. R., 817; 57 N. E., 1003. *Meaning of next:* 21 Ency., 534; 144 Mass., 135. *As to rules of construction of the by-laws:* End. on Int. of Stats., secs. 27, 73, 103; 35 L. R. A., 202; 12 L. R. A., 436; 16 L. R. A., 754, 836; 60 S. W., 897; 97 S. W., 504; 17 Ency., 23; 14 S. C., 165; 20 S. C., 1; 1 Hill Ch., 51; 4 Rich. Eq., 22; 171 U. S., 30.

*Messrs. Cothran, Dean* and *Cothran,* oral argument.

August 6, 1907. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. On June the 19th, 1896, J. E. Speegle became a member of the defendant corporation, Woodmen of the World, and received from it a benefit certificate for three thousand dollars, payable at his death to

his wife, Susan Speegle, subject to the conditions named in the constitution and by-laws of the corporation. The beneficiary, Susan Speegle, died in March, 1900, leaving seven children. No new beneficiary was named in the certificate. Thereafter J. E. Speegle married the plaintiff, Hattie K. Speegle, who is now his surviving widow, he having died on the 17th of October, 1905. She began this action on the 22d day of March, 1906, to recover the amount named in the certificate.

The defendant corporation filed a petition for interpleader, alleging a dispute between the plaintiff, Hattie K. Speegle, and the above named children of J. E. Speegle, deceased, as to who was entitled to the benefit provided for in the beneficiary certificate, and prayed that it be allowed to pay the fund into the Court and that the children of J. E. Speegle be made parties defendants, and contest with the plaintiff the right to the benefit. The petition having been granted, the children appeared and answered.

After hearing the case, his Honor, Judge R. C. Watts, held that they were entitled to the fund. The plaintiff appealed.

Section 3 of the constitution and by-laws of the defendant corporation, the section germane to this discussion, is as follows: "The objects of the order shall be to combine white male persons of sound bodily health, exemplary habits and good moral character, between the ages of fifteen and fifty-two years, into a secret, fraternal, beneficiary and benevolent order; provide funds for their relief, comfort the sick and cheer the unfortunate by attentive ministrations in times of sorrow and distress; promote fraternal love and unity; create a fund from which, on reasonable and satis-. factory proof of death of a beneficiary member, who has complied with all of the requirements of the order, there shall be paid a sum not to exceed three thousand dollars, to the person or persons named in his certificate as beneficiary or beneficiaries, which beneficiary or beneficiaries shall be his wife, children, adopted children, parents, brothers, sis-

ters, or other blood relations, or to persons dependent upon the member. * * * The name or names of the benefi-ciary or beneficiaries shall be written in every beneficiary certificate issued. In case such benefits are payable to one of the relations named herein, who shall at the time of the death of a member be also deceased, and no new designation has been made as hereinafter provided during life, the benefits shall be due and payable to the member's next living relation in the order named in this section; if there be no such relative surviving, then said benefits shall be forfeited to and remain in the beneficiary fund."

Taking into consideration the philanthropic views stated in this by-law, we premise that one of the purposes uppermost in the minds of the founders of the organization was the protection of those near and dear to the members of the order from want in case of death. Therefore, subject to the general rules, that construction should be adopted which is most consistent with this view.

The by-law permits the member to make any one of the above classes his beneficiary, but, we do not think, it going too far to say that the presumption was that the party nearest and most likely to be in need, should the insured die, would be named in the certificate as beneficiary. In case the person so named should die, prior to the death of the member, then continuing the presumption that the benefit should be received by the person next closest to the member, it was provided that in such case "the benefit shall be due and payable to the member's next living relation in the order named in this section." Thus the rule of kinship is laid down by the certificate and necessarily binds the Court (it being the contract of the parties) in arriving at a conclusion as to who is entitled to the benefit of the policy.

Difficulty arises, however, over the word "next," as used in the section quoted. Defendants contend that it refers to the beneficiary and means the next class after that named in the certificate as beneficiary, while appellant contends that it is used as a synonym of "nearest" and refers to the

member. There can be no doubt that there is a shade of difference between the words "next" and "nearest." It is likewise equally true that this shade of difference is often disregarded. Therefore, if by using the terms as synonymous the proper intention can be arrived at, we can legitimately do so. Evidently, as was said above, the intention was to see that the immediate connections of the member, that class nearest to him, should not suffer. This being the purpose, "next" must have the meaning of "nearest" and have reference to the member, not the beneficiary, otherwise the very nearest would often go unprovided for. The presumption being that the beneficiary was the person closest to the insured, then in case of death of the beneficiary, and afterwards of the insured, no change of beneficiary having been made, the by-law sought to provide for the next closest relation. In this sense we may give "next" the meaning contended for by the respondents; that is the implication of a third person coming between. Thus, in case the dying beneficiary was insured's wife and there was a second wife at the time of his death, she, in the eyes of the framers of the by-law, was construed to be the relation next nearest to the member. Again, in the absence of a second wife, the children would be the nearest, and so on through the classes. The law works automatically, so to speak, there being no members of one class, the next class taking.

The respondents contend, however, that upon the death of the wife, the benefit became practically vested in the children; and, further, that by his failure to designate a new beneficiary, the deceased exhibited his intention that the children should be beneficiaries. These contentions cannot be sustained. In the first place, it is admitted by the respondents that the insured had the power to change the beneficiary at any time he saw fit, the matter being entirely under his control. Therefore, until his death, until he was no longer able to change his mind as to who should be his beneficiary, no one could be said to have a vested interest in the benefit. Even if there had been no second wife, the

greatest interest that the children could possibly have had prior to the death of J. E. Speegle, in the absence of being expressly delegated as beneficiaries, was a mere expectancy or contingency.

As to the second contention, who can say that the deceased was not of the opinion that by failure to designate a new beneficiary the benefit would fall to his wife at his death.   Clearly, we think this opinion on his part as probable as the one contended for by the respondents.   The certificate especially provided that in case of the death of the named beneficiary, the next relation, beginning with the wife, should take.   By his second marriage the deceased practically named, or rather made in the light of the by-laws, a new beneficiary, and thus caused the expectancy of the children to lapse. *Mattison* v. *Woodmen of the World,* 60 S. W., 897; *Harris* v. *Harris,* 97 S. W., 504.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed.